IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Alma Grandy, as guardian of M.G.,

    Plaintiff,

Case No. 1:20-cv-3292-MLB

v.

Stephen Christopher Huenke,

    Defendant.

_____/

**OPINION & ORDER**

This case arises from a fight between two female students (including M.G.) at Newton High School. Defendant (a police officer) broke up the fight, seized M.G., and escorted her to the school's main office. But M.G.'s mother claims he was too rough. So she sued him for excessive force under the Fourth Amendment and battery under Georgia law. Defendant now moves for summary judgment based on qualified immunity and official immunity. (Dkt. 51.) The Court grants Defendant's motion.

**I.   Background**[1]

In 2019, M.G. (then 15 years old) got into a fight with another female student in a crowded cafeteria at Newton High School. (Dkt. 57 ¶ 1.) Defendant and Vice Principal Michael Chapple ran towards the scene and found the students fighting on the ground. (*Id.* ¶ 2.) Defendant dropped to his knees, grabbed M.G., repeatedly told her to "stop," and eventually pinned her on her back. M.G. struggled, lashed out, cursed at him, and knocked off his glasses. (*See id.* ¶ 4.) Defendant then placed his left forearm across her neck and used his right hand to put his glasses back on. This put pressure on M.G.'s windpipe. (*See* Dkts. 51-3 at 108; 57 ¶ 4.) Vice Principal Chapple picked up the other student and carried her away.

---

[1] The parties filed several videos of the fight and its aftermath. (*See* Dkts. 52; 60.) The Court's description of events is based on these videos (supplemented by other evidence where indicated). The Court generally ignores any evidence/facts not included—in the required format—in the parties' Rule 56.1 filings. *See* LR 56.1, NDGa.; *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (compliance with Local Rule 56.1, which the Eleventh Circuit holds in "high esteem," is "the only permissible way . . . to establish a genuine issue of material fact"). This means the Court declines to consider evidence cited solely in the parties' briefs, as well as factual assertions in the parties' Rule 56.1 filings that lack a specific citation to the record. *See* LR 56.1, NDGa. Even considering these materials, however, they would not change the Court's conclusion that summary judgment is appropriate here.

Defendant and M.G. stood up a few seconds later, still entangled with one another. M.G. continued to curse at Defendant and, while still struggling against Defendant, knocked Defendant's glasses off his face a second time. (*See* Dkt. 57 ¶ 13.) Defendant yelled "you hit me," put his hand on the front of her neck, pushed her against the wall, and said "you hit me in the f*cking mouth again and I'll charge you." Defendant removed his hand from M.G.'s neck after about two seconds. M.G. continued to curse and resist until Defendant handed her over to another officer.

Defendant later escorted M.G. to the school's main office. (*Id.* ¶ 20.) As he did so, he told her "I don't know why you wouldn't stop and I don't know why you tried to swing on me. . . . You had no reason to swing on a cop." He also asked M.G. if she was ok, and she said she was. After dropping M.G. off at the main office, Defendant told staff he hurt his arm during the fight. The school nurse evaluated his arm and advised him to get it looked at further. Another officer from the cafeteria noted M.G. "swung" at Defendant and "hit" him.

M.G.'s mother filed this lawsuit about a year later. She asserts claims for excessive force and battery against Defendant (solely in his

3

individual capacity) on the ground that he "used neck restraints against M.G. on two (2) occasions." (Dkt. 56 at 12; *see* Dkt. 10 ¶¶ 12–14, 18–19.)[2] Defendant moves for summary judgment based on qualified immunity and official immunity.

## II.   Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact

---

[2] Plaintiff's complaint also asserts other claims (including against other defendants). But the Court dismissed those claims at the pleading stage.

4

to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

### III. Excessive Force

Plaintiff claims Defendant used excessive force against M.G. in violation of the Fourth Amendment because he twice applied pressure to M.G.'s neck. Defendant says qualified immunity bars this claim. The Court agrees.

#### A. Law

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). An official asserting this defense must show that he "engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The burden then "shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* This requires the plaintiff to show "(1) the

defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.*

To make this showing, plaintiff must demonstrate "the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that every reasonable official would have understood that what he is doing violates the Constitutional right at issue." *Gates*, 884 F.3d at 1302. "The critical inquiry is whether the law provided the [official] with fair warning that [his] conduct violated the Fourth Amendment." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). "Fair warning is most commonly provided by materially similar [binding] precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296; *see J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018) (only binding cases can create clearly established law).

If the plaintiff cannot point to a materially similar binding precedent, he can establish fair warning only if the defendant's conduct violated federal law "as a matter of obvious clarity." *Coffin*, 642 F.3d at 1014; *see Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017).

6

This requires plaintiff to show (1) "the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful," or (2) "the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Gaines*, 871 F.3d at 1209; *see Gates*, 884 F.3d at 1296–97 ("Authoritative judicial decisions may establish broad principles of law that are clearly applicable to the conduct at issue," or "it may be obvious from explicit statutory or constitutional statements that conduct is unconstitutional").

B.   **Analysis**

Plaintiff does not, and could not, dispute that Defendant was engaged in a discretionary function when he seized M.G. (*See* Dkt. 56 at 2, 14.)[3]  The burden thus shifts to Plaintiff to show Defendant used excessive force in violation of clearly established law.  Plaintiff has not

---

[3] *See, e.g.*, *Young v. Brady*, 793 F. App'x 905, 910 (11th Cir. 2019) ("Officer Brady was acting within his 'discretionary authority' at the point that Young was seized."); *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) ("[B]ecause Suszczynski was attempting to arrest or restrain Arango, Suszczynski was clearly engaged in a discretionary capacity.").

7

cited a materially similar case in her favor, much less a binding one. So her only hope is the obvious clarity doctrine. This puts Plaintiff in a tough spot because obvious clarity cases are "rare" and constitute "a narrow exception" to the requirement for fact-specific precedent. *Coffin*, 642 F.3d at 1015; *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011). To invoke the doctrine here, Plaintiff "must show [Defendant's] conduct was so far beyond the hazy border between excessive and acceptable force that [Defendant] had to know he was violating the Constitution even without caselaw on point." *Hines v. Jefferson*, 795 F. App'x 707, 712 (11th Cir. 2019).

Plaintiff has not made this showing. Nor could she, given the Eleventh Circuit's holding in *Hines*. That case also involved a fight between two female students at Newton High School. But the facts were much more egregious. A police officer picked up one of the students by her neck, put her in a "choke hold," and then carried her through the school in that position for about two minutes while "her feet dangl[ed] above the ground." *Hines*, 795 F. App'x at 710. The student (who was 14 years old) told the officer "she could not breathe." *Id*. But the officer did not put her down until she reached her office. *Id*.

The student's mother sued the officer for excessive force. The court found qualified immunity applied because "placing [the student] in a choke hold and carrying her to the office by her neck" did not fall within the "narrow" obvious clarity doctrine. *Id.* at 712. The court cited several facts in support of this conclusion: the student "had been involved in a fistfight with another student"; "officials attempted to break up the fight"; "the amount of force used was minimal" (despite the student suffering "neck pain" and requiring "a foam brace"); the student was "squirming, wiggling, twisting, and turning to get away from [the officer]" during the choke hold; and the officer released the student after about two minutes. *Id.* at 712–13. "Given these facts," the officer's conduct was "not so far beyond the hazy border between excessive and acceptable force that [she] had to know she was violating the Constitution." *Id.* at 713.

Our facts present an even stronger case for qualified immunity than *Hines*. As in *Hines*, the officer here broke up a fight between two female high school students, one of the students resisted, and the officer applied pressure to that student's neck to effectuate a seizure. But the neck contact here was briefer, less severe, and prompted by fiercer resistance.

9

It lasted only a few seconds (not minutes), it involved a hold and a push (not a lift), Defendant never put his hands or arms *around* M.G.'s neck (no choke hold), M.G. did not express discomfort at the time (no breathing complaints), she instead told Defendant she was fine, nothing suggests she experienced any aftereffects (no pain or neck brace), M.G.'s resistance included cursing and striking Defendant (not just wriggling to get away), and Defendant even had to get medical attention after the encounter. In other words, everything about this case points towards qualified immunity at least as much as *Hines*—and often far more so. That makes qualified immunity applicable here, just as it was in *Hines*.

Plaintiff counters that Defendant's use of force violated "his employer's written policy" and injured M.G.'s back and neck. (*See* Dkt. 56 at 1–2, 11.) But the Court cannot consider these facts because Plaintiff failed to present them in her Rule 56.1 filing in the required format. Moreover, even if Plaintiff had put these facts in the record, they would not affect the outcome here. "[F]ailure to comply with the policies of [a] County Sheriff's Office does not necessarily equate to excessive force in violation of the Constitution." *Hill v. Bryant*, 2017 WL 3585429, at *12 (N.D. Fla. June 28, 2017); *see Smith v. Freland*, 954 F.2d 343, 347 (6th

Cir. 1992) ("[T]he fact that Officer Schulcz's actions may have violated Springdale's policies regarding police use of force does not require a [finding of excessive force under the Fourth Amendment]."). And "the fact that a plaintiff is injured during his confrontation with police does not necessarily mean that the injuries resulted from an unconstitutional use of excessive force." *Liese v. Delio*, 2016 WL 7325649, at *6 (M.D. Fla. May 26, 2016). There are simply too many facts going the other way for a policy violation or an alleged injury to change the outcome here.

Plaintiff's excessive force claim is barred by qualified immunity because she has not shown Defendant's use of force violated clearly established law. Defendant is thus entitled to summary judgment.

**IV.  Battery**

Plaintiff also claims the neck contact in this case amounts to battery under Georgia law. Defendant says, even if that is so, he is protected by official immunity. The Court agrees with Defendant.

**A.  Law**

In Georgia, county police officers like Defendant "are subject to suit only when they negligently perform or fail to perform their ministerial functions or when they act with actual malice or intent to cause injury in

11

the performance of their official functions." *Peterson v. Baker*, 504 F.3d 1331, 1339 (11th Cir. 2007); *see Bailey v. Wheeler*, 843 F.3d 473, 485–86 (11th Cir. 2016). This is called the doctrine of official immunity. Plaintiff does not—and could not—dispute that Defendant was performing an official, non-ministerial function when he seized M.G. (*See* Dkt. 56 at 2, 14.)[4] So official immunity applies here unless Plaintiff can show Defendant acted with actual malice or intent to injure. *See Smith v. LePage*, 834 F.3d 1285, 1297 (11th Cir. 2016); *Porter v. Massarelli*, 692 S.E.2d 722, 726 (Ga. Ct. App. 2010).

"Actual malice is a demanding standard." *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). It requires "a deliberate intention to do wrong and denotes express malice or malice in fact." *Wilson v. Cromer*, 847 S.E.2d 213, 217 (Ga. Ct. App. 2020). "Implied malice," "deliberate indifference," "reckless disregard for the rights and safety of others," "unreasonable conduct," "frustration," "irritation," "anger," and "ill will"

---

[4] *See, e.g.*, *Wells v. Talton*, 2015 WL 4656508, at *12 (M.D. Ga. Aug. 5, 2015) (officer's decision to "stop and seize" plaintiff was official, discretionary function); *Mercado v. Swoope*, 798 S.E.2d 291, 293–94 (Ga. Ct. App. 2017) ("The decision to make a warrantless arrest . . . is considered a discretionary act within the scope of the officer's official functions.").

are all insufficient. *Id.*; *Jones v. Walsh*, 711 F. App'x 504, 507 (11th Cir. 2017); *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1145 (N.D. Ga. 2016). "[M]alice in this context means badness, a true desire to do something wrong." *Peterson*, 504 F.3d at 1339.

"Intent to injure" is also a high bar. *Wells*, 2015 WL 4656508, at *12. It requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999). 'This definition of intent contains aspects of malice, perhaps a wicked or evil motive." *Id.* Indeed, several courts have suggested it is really part of the actual malice requirement rather than an independent principle. *See Williams*, 181 F. Supp. 3d at 1144 n.34 ("[I]t is not clear whether 'actual malice' and 'actual intent to cause injury' are in fact separate and distinct principles."); *Williams v. DeKalb Cnty.*, 840 S.E.2d 423, 434 (Ga. 2020) ("A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs.").

## B. Analysis

Plaintiff has not shown Defendant acted with actual malice or intent to injure. *Peterson* makes that clear. 504 F.3d 1331. In *Peterson*, a teacher repeatedly told a middle school student to sit down. *Id.* at 1334. The student refused and tried to leave the classroom. *Id.* The teacher put her arm across the doorframe to block the student's path. *Id.* But the student "moved [the teacher's] hand off the door . . . not hard, [he] just pushed it down." *Id.* The teacher then "grabbed [the student's] neck" and "squeezed [him] until [he] couldn't breath[e]." *Id.* at 1334–35. "[W]hen the teacher relinquished her grasp, it took [the student] a while to catch [his] breath." *Id.* at 1335. The student walked away from the incident with "red marks," "blue and red bruises," and a "scratch" on his neck. *Id.* The teacher was immediately placed on administrative leave and resigned shortly thereafter. *Id.*

The student's mother sued the teacher for battery under Georgia law. The court found official immunity applied because "the teacher's act evince[d] an intention to regain control of a student who not only refused to follow her directions, but who also deliberately used force against her to leave the classroom." *Id.* at 1340. "[T]he teacher's response to the

14

student's defiant misconduct was not entirely unreasonable"—and that made it impossible to say "the teacher intended to do something wrongful or to cause the student significant injury." *Id.*

The same is true here. As in *Peterson*, Defendant repeatedly gave instructions to a student, the student "refused to follow [those] directions," Defendant physically intervened, the student "deliberately used force" against him, and Defendant applied pressure to the student's neck. Indeed, the facts are even more favorable to Defendant here because he told M.G. to stop *fighting* (not just to sit down in class), M.G. repeatedly lashed out at Defendant and struck him in the face (as opposed to simply moving Defendant's hand off a doorframe), and Defendant used much less force than the teacher in *Peterson* (no neck "squeezing," breathing issues, or injuries). So, as in *Peterson*, Defendant's "response to [M.G.'s] defiant misconduct was not entirely unreasonable," it "evince[d] an intention to regain control of [the] student," and it is protected by official immunity.

Plaintiff's battery claim is barred by official immunity because she has not shown Defendant acted with actual malice or intent to injure. Summary judgment is thus appropriate.

15

## V.   Conclusion

The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 51).

**SO ORDERED** this 15th day of July, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE